[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: APPLICATION FOR TEMPORARY INJUNCTION
The plaintiff filed a motion for temporary injunction seeking to enjoin the defendant from proceeding to arbitration for a resolution of the parties' dispute. The underlying issue before this court is whether or not the letter agreement signed by the defendant, and the disclosure statement sent by the plaintiff to the defendant together with that letter agreement provides for arbitration.
On April 14, 1989 the plaintiff sent a letter offering to assist the defendant in formulating a plan to meet the defendant's current financial objectives for a fee of $500. In addition, the defendant would be charged fees for services provided if any of the plaintiff's recommendations were implemented. The letter referred to a "brochure and a disclosure statement" which was also provided to the defendant and stated that "[E]xecution of this letter of agreement by you acknowledges your receipt of this disclosure material."
The defendant accepted the offer of assistance by signing the form on July 6, 1989 and forwarding the initial fee of $500. (Exhibit 1). The enclosed material was entitled "Disclosure Statement." Although the letter defined this statement as providing a description of the firm, its history and key personnel, it went beyond this stated purpose. It described the services it was to provide, fixed fee financial planning and specialized analysis in addition to its "comprehensive financial planning." In addition, it provided for the refund of the $500 fee, in whole or in part. It further provided as follows: "[I]n the event of a dispute, you and we agree that any controversies between us concerning any transaction or the construction, CT Page 1537 performance or breach of this or any agreement between us, whether entered into prior, on, or subsequent to this date, shall be determined by arbitration." (Exhibit 2). This clause makes specific reference to "this or any agreement between us." (italics added for emphasis).
In addition, Jeffrey Rachlin, President of Financial Planning Associates, Inc., implied that this statement is a contract. In his letter to the American Arbitration Association dated April 26, 1995, he stated that, based upon the advice of one Jeffrey Kelvin of Financial Planners Assistance, "we immediately changed the format of our investment advisory contract with clients; instead of the four-page disclosure agreement we included Part II of Form ADV with our engagement letter . . . ." The plaintiff did not provide evidence as to the substituted form, but there is no doubt as to the plaintiff's understanding of the disclosure statement it sent Silverman.
The court concludes that the disclosure statement was a part of the initial offering in the letter agreement, inasmuch as it set forth duties and obligations for both sides. The party who actually does the writing presumably will be guided by its own interests and goals in the transaction. Ravitch v. StollmanPoultry Farms, 165 Conn. 135, 146, n. 8, 328 A.2d 711 (1973). This court, therefore, construes any ambiguity with regard to the inclusion of the disclosure statement in the letter agreement against the plaintiff drafter. Game-A-Tron Corporation v. Gordon,2 Conn. App. 692, 695, 483 A.2d 620 (1984).
Even were the disclosure statement not considered a part of the letter agreement, the court finds that the plaintiff is estopped to deny that the agreement provided for arbitration in the event of a controversy between the parties. "The two essential elements of estoppel are that `one party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act on that belief; and the other party, influenced thereby, must change his position or do some act to his injury which he otherwise would not have done.'" Multiplastics, Inc. v. Arch Industries, Inc.,166 Conn. 280, 286, 348 A.2d 618 (internal citations omitted). The court finds that the disclosure statement was provided to induce the defendant's reliance on the information given in the statement as to the professional capabilities of the plaintiff's staff as well as to the scope of the plaintiff's activities. The plaintiff selected the components of its document from a variety CT Page 1538 of forms it obtained from an international group of financial planners. The plaintiff cannot derive a benefit from its failure to obtain properly drafted documents tailored to its specific business.
The defendant argues that the arbitration clause is "void as being against public policy" and relies upon Mc EldowneyFinancial Services. CCH 1986-1987 Binder sec. 78,373 (September 17, 1986). See Exhibit D attached to plaintiff's brief dated November 9, 1995. In that letter, the Securities Exchange Commission reviewed a proposed arbitration clause and stated that the clause cited "may violate the antifraud provisions in sec. 206 of the "Investment Advisers) Act of 1940." The court finds that plaintiff's reliance is misplaced. The staff reply does not state that the arbitration provision is void but rather that the client needs to know that he has not waived the right to choose the forum, whether arbitration or adjudication, in which to seek resolution of disputes. The McEldowney staff reply is not dispositive of the issue before this court.
The plaintiff has not borne its burden of proving that it would be irreparably harmed by arbitration proceedings. It had not met its burden by showing that it has no adequate remedy at law.
For the foregoing reasons, the plaintiff's motion for a temporary injunction is denied.
Leheny, J.